NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1238
_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

SHAWN A. AUDAIN, a/k/a Bugie

Shawn A. Audain,
                                        Appellant
_____

On Appeal from the District Court of the
Virgin Islands – Appellate Division
(D.C. No. 3-06-cr-00046-001)
District Judges:  Hon. Curtis V. Gomez and Raymond L. Finch
Superior Court Judge:  Honorable Harold W. Willocks
_____

Submitted under Third Circuit L.A.R. 34.1(a)
On December 9, 2014

Before:  CHAGARES, JORDAN and SHWARTZ, *Circuit Judges*.

(Filed: December 16, 2014)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Shawn A. Audain appeals an order of the Appellate Division of the District Court of the Virgin Islands affirming the judgment of the Superior Court of the Virgin Islands. The Superior Court had denied Audain's motion for judgment of acquittal and his motion for a new trial. As did the District Court, we will affirm.

## I.      Background

At 4:30 a.m. on May 22, 2005, Lakheal George arrived home after attending a social event at the Virgin Islands Taxi Association. As he walked to his front door, he saw a man he recognized as Nordel Charles emerge from around the corner of his house with a gun in hand. George then saw two other men, one of whom he immediately recognized and knew as "Fatman," also come from behind the corner of the house. (App. at 341.)

Realizing that he was in danger, George ran to his front door to escape, but Charles shot him once in the left arm and twice in the right arm, causing George to fall to the ground with his head towards the front porch step. Charles then walked onto the porch and shot George five times in the back. Once Charles stopped firing, George looked up and saw Fatman and the third man, whom he then recognized as Audain, coming up the porch stairs. Audain and Fatman patted down George's clothes and Audain took $1,400 from George's front pocket. George then heard a car start and the three men left.

Police Officer Earl Mills was sent to investigate the shooting and saw several spent bullet casings littered along the walkway and porch, bullet holes in the door and

2

wall, and a trail of blood that led from the porch into the house. Despite his many gunshot wounds, George was alert and able to clearly describe to Officer Mills the three assailants and provided a description of the car in which the assailants fled.

Audain was arrested on July 2, 2005, and charged in a multiple count information. The eight counts relevant to Audain charged him with aiding and abetting several crimes, in violation of 14 V.I. Code Ann. tit. § 11(a), including: (I) attempted first degree murder; (II) use of an unlicensed firearm during the commission of an attempted murder; (III) first degree assault with the intent to murder; (IV) first degree assault with the intent to commit robbery; (V) use of an unlicensed firearm during the commission of a first degree assault; (VI) first degree robbery; (VII) use of an unlicensed firearm during the commission of a robbery; and (VIII) unauthorized possession of ammunition.

After a three-day trial, the jury found Audain guilty on all eight counts. He moved for a judgment of acquittal, which the trial court denied. Prior to sentencing, the trial court also denied Audain's motion for a new trial based on a letter from Charles admitting guilt for the crimes and exculpating Audain. On June 9, 2006, Audain appealed the denial of his motions and the judgment of conviction to the Appellate Division of the District Court of the Virgin Islands. The District Court reversed the trial court's judgment as to the charge of unauthorized possession of ammunition but affirmed the rulings of the trial court in all other respects. This timely appeal followed.

## II.    Discussion[1]

Audain raises two issues on appeal.  First, he argues that the District Court erred in affirming the trial court's denial of his motion for judgment of acquittal on Counts I, II, III, V, and VII.  Second, he maintains that the District Court erred in affirming the trial court's denial of his motion for a new trial based on Charles's letter.

### A.    *Motion for Judgment of Acquittal*[2]

In order to prove that a defendant is guilty of aiding and abetting under 14 V.I.C. § 11(a), the government must establish "(1) that the substantive crime has been committed, and (2) [that] the defendant knew of the crime and attempted to facilitate it." [3] *People v. Clarke*, No. 2009-0104, 2011 WL 2150103, at *3 (V.I. Apr. 12, 2011).  A defendant attempts to facilitate the commission of a crime if he "associate[s] himself with the venture, … participate[s] in it as something he wishe[s] to bring about, and …

---

[1] The District Court had jurisdiction over the judgment of the Superior Court under 48 U.S.C. § 1613a(a) and (d).  We have jurisdiction over final decisions of the Appellate Division pursuant to 48 U.S.C. § 1613a(c) and 28 U.S.C. § 1291.  The Supreme Court of the Virgin Islands began accepting appeals from the Superior Court on January 29, 2007.  *People of the Virgin Islands v. Baxter*, No. 2007-116, 2008 WL 901537, at *5 (V.I. Feb. 12, 2008).  Audain's appeal was taken prior to that effective date and thus was properly subject to the District Court's jurisdiction.  *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 359 n.2 (3d Cir. 2007).

[2] When reviewing a motion for judgment of acquittal, we exercise plenary review, viewing the record in the light "most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt based on the available evidence."  *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal quotation marks omitted).

[3] We note, as does Audain (Appellant's Opening Br. at 21), that 14 V.I.C. § 11(a) is nearly identical to 18 U.S.C. § 2(a).  Both provisions make a person who aids or abets in the commission of a crime punishable as a principal.

4

s[eeks] by his words or action[s] to make it succeed." *United States v. Xavier*, 2 F.3d 1281, 1288 (3d Cir. 1993) (applying 14 V.I.C. § 11(a)). The requisite intent can be shown with evidence that the defendant encouraged or helped the perpetrator. *Id*.

With respect to Count I (attempted first degree murder), Count II (using an unlicensed firearm during the commission of an attempted murder), Count III (first degree assault with the intent to murder), and Count V (using an unlicensed firearm during the commission of a first degree assault), Audain argues that the government offered no evidence from which a reasonable juror could find that Audain knew that Charles was going to attempt to murder George, or that Audain tried to facilitate the attempted murder and first degree assault. Similarly, with regard to Count II (using an unlicensed firearm during an attempted murder), Count V (using an unlicensed firearm during first degree assault), and Count VII (using an unlicensed firearm during the commission of a robbery), Audain asserts that there was no evidence at trial tending to show that Audain knew that Charles possessed a firearm or that Audain intended to aid in a crime of violence involving a gun.[4]

---

[4] Neither Audain nor Charles were licensed in the United States Virgin Islands to possess a firearm on the night in question. Audain does not argue that the government was required to present evidence that Audain knew Charles's gun was unlicensed, or that the presented evidence was insufficient in that respect. Instead, Audain contends that there was insufficient evidence in the record to show that he "had advance or prior knowledge or knew that Co-Defendant Charles was going to possess or use a firearm." (Appellant's Opening Br. at 22.) That choice of focus is understandable, since both our cases and those of the District Court of the Virgin Islands suggest that proof of knowledge that the firearm was unlicensed is unnecessary to sustain a conviction of aiding and abetting the possession of an unlicensed firearm during the commission of a crime of violence under 14 V.I. § 2253(a). *See e.g.*, *Gov't of Virgin Islands v. Williams*, 739 F.2d 936, 940-41 (3d Cir. 1984) (concluding that the evidence was sufficient to

His arguments are unpersuasive. The record contains sufficient evidence from which a rational juror could conclude that Audain knew Charles intended to murder George and that Audain facilitated the attempted murder and first degree assault. At trial, the government presented evidence that George approached Audain and Charles on the night of the shooting and told them that he had heard rumors that Audain and Charles were planning to kill him, presumably in retribution for a previous altercation in which Charles was stabbed and George was initially suspected as the assailant. In response, both Audain and Charles acted suspiciously – they stopped moving, looked shocked, and told George not to worry about it. Furthermore, George's testimony that Audain, Charles, and Fatman were hiding behind his house when he arrived could allow a rational juror to conclude that they were "lying in wait" for George to return so they could attack him. A rational juror could also find, in the aftermath of the shooting, support for the conclusion that Audain attempted to facilitate George's murder and first degree assault because Audain ran up to George, stole money from his person, and escaped with the other assailants.

Viewing the evidence in the light most favorable to the government, a rational juror could also conclude that Audain knew Charles possessed a firearm. The record shows that on the drive home from the function at the Taxi Association, George was

support the charge of aiding and abetting the possession of a firearm during the commission of a crime of violence under 14 V.I. § 2253(a) without analysis of whether the accomplice-defendant knew the firearm was unlicensed); *United States v. Harper*, No. 2011-004, 2014 WL 3708071, at *6 (D.V.I. July 25, 2014) (same).

driving behind Audain's car and a red car in which Charles and Fatman were passengers. George testified that he saw someone in the red car waive a gun out the window and discharge shots into the air. Shortly after, the red car crashed into a wall and both George and Audain stopped to check on the passengers. The fact that a gun was fired from the red car in which both Fatman and Charles were riding, that it occurred in such close proximity to Audain's car, and that Audain stopped to assist the passengers of the red car could certainly allow a rational juror to find that Audain knew of the presence of a firearm. Accordingly, the Appellate Division of the District Court did not err in affirming the trial court's denial of Audain's motion for judgment of acquittal on Counts I, II, III, V, and VII. [5]

B.    *Motion for a New Trial*[6]

Audain also argues that the trial court abused its discretion when it denied his motion for a new trial based on "newly discovered" evidence.[7] More specifically,

---

[5] Audain contends that this case is similar to *Hughes v. People of the Virgin Islands*, wherein the Virgin Islands Supreme Court found that there was no evidence linking the defendant to "planning, facilitating, encouraging, or attempting to participate in [the murder]," because there was no evidence that he provided anyone with a gun, shouted encouragement, or participated in the shooting himself. No. 2012–0030, 2013 WL 5862656, at *3 (V.I. Oct. 31, 2013). *Hughes* is an example of a case in which the evidence was found insufficient to prove aiding and abetting, but, as discussed above, the government presented sufficient evidence in this case for a rational trier of fact to conclude that Audain aided and abetted the crimes of conviction.

[6] We review the denial of a motion for a new trial for abuse of discretion. *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008).

[7] We have held that five general requirements must be met before a district court can order a new trial on the ground of newly discovered evidence:

Audain points to a letter written by Charles after his conviction, in which Charles confessed that he was solely responsible for the crimes and proclaimed Audain's innocence. Audain contends that Charles's letter constitutes "newly discovered evidence," which justifies a new trial.

Once again, Audain's argument is unpersuasive. In *United States v. Jasin*, we characterized post-sentencing admissions by codefendants not as "newly discovered evidence" sufficient to warrant a new trial, but instead as "newly available evidence" which does not ordinarily merit a new trial.[8] 280 F.3d 355, 368 (3d Cir. 2002). Audain's contention that *Jasin* is inapplicable because Charles wrote the letter prior to sentencing is incorrect. Our holding in *Jasin* was not limited to post-sentencing statements, but was instead based on the "unambiguous language of [Federal] Rule [of Criminal Procedure] 33, which contemplates granting of a new trial on the ground of 'newly discovered

---

> (a) the evidence must be[,] in fact, newly discovered, i.e., discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) [the] evidence relied on[] must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, … as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Jasin*, 280 F.3d 355, 361 (3d Cir. 2002) (quoting *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976)). Audain focuses only on the first factor, which the government contends is not met here.

[8] Where the substance of a codefendant's testimony is known to the defendant at the time of trial, that evidence constitutes only "newly available evidence," and "cannot be considered 'newly discovered evidence' under Rule 33." *Jasin*, 280 F.3d at 368; *see also United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007) ("[W]hen a defendant is aware that his codefendant could provide exculpatory testimony but is unable to obtain that testimony because the codefendant invokes his privilege against self-incrimination prior to and during trial, the codefendant's postconviction statement exculpating the defendant is not 'newly discovered evidence' … .").

evidence' but says nothing about newly available evidence." *Id*.; *see also United States v. Owen*, 500 F.3d 83, 90 (2d Cir. 2007) ("We … reject [defendant's] argument that, in determining whether exculpatory statements by codefendants constitute newly discovered evidence, courts should distinguish between pre- and post-sentence exculpatory statements … . If a codefendant's testimony is not in fact newly discovered, the timing of its delivery is irrelevant." (internal quotation marks omitted)). Accordingly, the District Court did not err in affirming the trial court's denial of Audain's motion for a new trial.

## III. Conclusion

For the foregoing reasons, we will affirm.